## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| JERMARAE HERBERT, | : | |
| | : | |
| Plaintiff, | : | Case No. 5:22-CV-00081-MTT-MSH |
| | : | |
| v. | : | |
| | : | |
| TIMOTHY WARD, *et al*., | : | Proceedings Under 42 U.S.C. §1983 |
| | : | Before the U. S. Magistrate Judge |
| Defendants. | : | |

## ORDER AND RECOMMENDATION

This case is currently before the United States Magistrate Judge for screening as required by the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915A(a).   *Pro se* Plaintiff Jermarae Herbert, an inmate at the Macon State Prison in Oglethorpe, Georgia filed a 42 U.S.C. § 1983 complaint.   ECF No. 1.   He also filed an incomplete motion for leave to proceed *in forma pauperis*.   ECF No. 2.   On March 11, 2022, the Court ordered Plaintiff to recast his complaint and provided him with specific instructions on how to do so.   ECF No. 4.   Plaintiff was further ordered to submit an account statement in support of his request to proceed without prepayment of the filing fee or pay the full filing fee.   Id. Plaintiff has now submitted a recast complaint (ECF No. 5) and an additional motion to proceed *in forma pauperis* which includes his inmate account statement (ECF No. 6)

Plaintiff's motions for leave to proceed *in forma pauperis* (ECF Nos. 2 and 6) are **GRANTED**.   This complaint is ripe for preliminary review.   Upon preliminary review, it is **RECOMMENDED** that Plaintiff's complaint be **DISMISSED** without prejudice.

## MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS*

Plaintiff seeks leave to proceed without prepayment of the filing fee or security therefor pursuant to 28 U.S.C. § 1915(a).   ECF Nos. 2 and 6.   As it appears Plaintiff is unable to pay the cost of commencing this action, his application to proceed *in forma pauperis* is hereby **GRANTED**.

However, even if a prisoner is allowed to proceed *in forma pauperis*, he must nevertheless pay the full amount of the $350.00 filing fee.   28 U.S.C. § 1915(b)(1).   If the prisoner has sufficient assets, he must pay the filing fee in a lump sum.   If sufficient assets are not in the account, the court must assess an initial partial filing fee based on the assets available.   Despite this requirement, a prisoner may not be prohibited from bringing a civil action because he has no assets and no means by which to pay the initial partial filing fee. 28 U.S.C. § 1915(b)(4).   In the event the prisoner has no assets, payment of the partial filing fee prior to filing will be waived.

Plaintiff's submissions indicate that he is unable to pay the initial partial filing fee. Accordingly, it is hereby **ORDERED** that his complaint be filed and that he be allowed to proceed without paying an initial partial filing fee.

I.      Directions to Plaintiff's Custodian

Hereafter, Plaintiff will be required to make monthly payments of 20% of the deposits made to his prisoner account during the preceding month toward the full filing fee.   The clerk of court is **DIRECTED** to send a copy of this Order to the facility where Plaintiff is housed.   It is **ORDERED** that the warden of the institution wherein Plaintiff is

2

incarcerated, or the sheriff of any county wherein he is held in custody, and any successor custodians, shall each month cause to be remitted to the Clerk of this Court twenty percent (20%) of the preceding month's income credited to Plaintiff's account at said institution until the $350.00 filing fee has been paid in full.   28 U.S.C. § 1915(b)(2).   In accordance with provisions of the Prison Litigation Reform Act ("PLRA"), Plaintiff's custodian is hereby authorized to forward payments from the prisoner's account to the Clerk of Court each month until the filing fee is paid in full, provided the amount in the account exceeds $10.00.   It is **ORDERED** that collection of monthly payments from Plaintiff's trust fund account shall continue until the entire $350.00 has been collected, notwithstanding the dismissal of Plaintiff's lawsuit or the granting of judgment against him prior to the collection of the full filing fee.

II.    Plaintiff's Obligations Upon Release

An individual's release from prison does not excuse his prior noncompliance with the provisions of the PLRA.   Thus, in the event Plaintiff is hereafter released from the custody of the State of Georgia or any county thereof, he shall remain obligated to pay those installments justified by the income to his prisoner trust account while he was still incarcerated.   The Court hereby authorizes collection from Plaintiff of any balance due on these payments by any means permitted by law in the event Plaintiff is released from custody and fails to remit such payments.   Plaintiff's Complaint may be dismissed if he is able to make payments but fails to do so or if he otherwise fails to comply with the provisions of the PLRA.

## PRELIMINARY REVIEW OF PLAINTIFF'S COMPLAINT

I.   Standard of Review

The Prison Litigation Reform Act ("PLRA") obligates the district courts to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee. *See* 28 U.S.C. § 1915A(a).   Screening is also required under 28 U.S.C. § 1915(e) when the plaintiff is proceeding IFP.   Both statutes apply in this case, and the standard of review is the same.   When conducting preliminary screening, the Court must accept all factual allegations in the complaint as true.   *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006) *abrogated in part on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010); *Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003).   *Pro se* pleadings, like the one in this case, are "held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Id.* (internal quotation marks omitted).   Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."   28 U.S.C. §1915A(b).

A claim is frivolous if it "lacks an arguable basis either in law or in fact."   *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (internal quotation marks omitted).   The Court may dismiss claims that are based on "indisputably meritless legal" theories and "claims whose factual contentions are clearly baseless." *Id.* (internal quotation marks omitted).   A complaint fails to state a claim if it does not include "sufficient factual matter,

4

accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion [of] a legally cognizable right of action."   *Twombly*, 550 U.S. at 555 (first alteration in original).   In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim.   *Id.* at 556.   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   *Iqbal*, 556 U.S. at 678.

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law.   *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal.   *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003).

II.   Plaintiff's Allegations

Plaintiff's writing style is disjointed and difficult to understand.   The Court has experienced much difficulty in comprehending Plaintiff's factual allegations and claims. To the best of the Court's ability, it discerns that Plaintiff considers his change in security classification and transfer to Macon State Prison in November 2021 a retaliatory act for

filing grievances and lawsuits while incarcerated at Georgia State Prison.   ECF No. 1 at 7.

He states that "Macon State Prison [is a] know[n] prison of violence and little to no staff".

*Id*.   Plaintiff complains that when he was transferred, his arm was in a half cast and sling

and that Macon State Prison officials did not "accommodate his disability".   *Id*. at 7-8.

Plaintiff avers that on November 9, 2021, he made Counselor Jefferies aware "of plaintiff's

disabilitys", the "unsafe environment in D-1", "that he has never been a gang member" and

he requested "to be placed at a prison with proper medical unit".   *Id*. at 9.

On December 1, 2021, Plaintiff was "attacked by 5 inmates who entered his cell

with weapons and stabbed the plaintiff and assaulted plaintiff until plaintiff was on

conscious".   *Id*. at 5.   Plaintiff states he "was struck several times by knives in multiple

areas 'face', 'head', 'back' and leg" and he "was also struck with machetes leaving the

plaintiff on conscious".   *Id*. at 11.   Plaintiff complains that he "was left on the dormatory

floor left to die because there was not any officers in the control booth or was there any

officer in the dormatory".   *Id*. at 5.   Plaintiff was taken to "the Cordale ER where Plaintiff

was treated and returned to Macon State Prison".   *Id*.   Plaintiff was bandaged and "given

prescription for pain and mild concussion from truma (sic) to the head repeatedly".   *Id*. at

11.   Plaintiff states that he repeatedly complained about pain but did not receive pain

medication until December 22, 2021.   *Id*. at 11-12.

Plaintiff further claims that Sergeant White "places 'hits on inmates' paying other

inmates to hurt or assault others at Macon State Prison" and that he "knew about the assault

because defendant ordered the assault against the plaintiff for the filing of a grievance about

personal belongings".   *Id*. at 10.   Lastly, Plaintiff complains that Defendant Miller has "violated plaintiff Eighth and fourteenth Amendment by failing to investigate the complaint and respond within the allowed SOP time frame in due process of law hindering plaintiff to move further with his action deliberty".   *Id*. at 9.

Plaintiff requests damages.   *Id*. at 13.   Plaintiff also requests to "be free from the Georgia Department of Corrections unsafe and understaff environment and be placed on some kind of ankle monitor or house arrest".[1]   *Id*.

III.   Plaintiff's Claims and Analysis

The Court screened Plaintiff's initial complaint and found it to be deficient.   ECF No. 4.   Specifically, the complaint was found to be replete with conclusory and vague assertions which failed to provide sufficient notice to any Defendant of the claims alleged against them.   *See id*.   Rather than recommending dismissal at the onset, the Court allowed the Plaintiff an opportunity to craft his complaint more carefully and even provided him with specific guidance on how to do so.   *Id*. at 5-7.

However, despite informing Plaintiff of the deficiencies with his first complaint and generously providing the Plaintiff a simple roadmap to follow in drafting his amended complaint, Plaintiff's recast complaint (ECF No. 5), is just as, if not more, indecipherable than his initial complaint (ECF No. 1).   For instance, although specifically instructed not to do so, Plaintiff plasters his recast complaint with legalese and caselaw which is often

---

[1] The Eleventh Circuit has held that "relief of an Eighth Amendment violation does not include release from confinement."   *Gomez v. United States*, 899 F.2d 1124, 1126 (11th Cir. 1990); *see also Heck v. Humphrey*, 512 U.S. 477, 481 (1994) (release from custody is not available as a remedy in a § 1983 action).

non-binding and immaterial.  *See* ECF No. 5.  Moreover, Plaintiff arbitrarily interjects these attempts to sound "lawyerly" in the middle of a sentence or paragraph leaving the Court random hanging clauses to decipher what may be his actual asserted constitutional claim as well as isolating his factual allegations from the factual scenarios of the legal citation.[2]  *Id.*

Mr. Herbert's complaint and recast complaint, as he authored them, have left the Court a jumbled mess to unravel to deduce concrete § 1983 claims.   Indeed, the Court has struggled to understand or decipher, as to each Defendant, what civil rights violations Plaintiff is alleging and the facts supporting any such constitutional violations.   Rule 8 of the Federal Rules of Civil Procedure requires a civil complaint filed in this Court to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief".  This Plaintiff has not done so.   While the Court interprets a *pro se* plaintiff's complaint with leniency and liberally construes it, a Court does not have "license ... to rewrite an otherwise deficient pleading [by a *pro se* litigant] in order to sustain an action." *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citations omitted), *overruled in part on other grounds by Iqbal*, 556 U.S. 662.   Thus, the Court could easily recommend dismissal of Plaintiff's complaint for his failure comply with Rule 8 and this Court's recast order.   The Court, however, has instead taken great effort to

---

[2] For example, Plaintiff writes "Defendant fail to accommodate plaintiff physical disabilities of suffering from previous surgerys [sic] and medical issues of pin in the hip to pins and plate in risk along with plaintiff cronic [sic] care and therapy. Bradley v. Puckett, 157 F. 3d. 1022 (5th Cir. 1988)".  ECF No. 5 at 7.  The Court spent considerable time enquiring that Plaintiff was undoubtedly discussing Plaintiff Bradley's injuries from the case cite and not his own.

extrapolate from Plaintiff's complaint and recast complaint the following potential § 1983 claims that Plaintiff may be attempting to raise.

A.    Failure to accommodate a disability claim

Plaintiff complains that Defendant Jefferies "was made aware of Plaintiff disabilitys", that Plaintiff suffered "discrimination for serious disabilitys", and he "fail to accommodate (sic) Plaintiff for his physical disabilities".   ECF No. 5 at 9.   These assertions give rise to potential claims under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA").   Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."   42 U.S.C. § 12132.   The RA similarly provides that, "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."   29 U.S.C. § 794(a).   State agencies and prisons are considered to be "public entities" which may be sued under the ADA and RA, *see United States v. Georgia*, 546 U.S. 151, 154 (2006), and the claims under these statutes are governed by very much the same standard, *Cash v. Smith*, 231 F.3d 1301, 1305 & n.2 (11th Cir. 2000).   To state a claim under the ADA or RA,

> a plaintiff generally must prove (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial

of benefit, or discrimination was by reason of the plaintiff's disability.

*Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1083 (11th Cir. 2007).

Hence. the first element that a Plaintiff must satisfy in a failure to accommodate claim is that he has a "disability" as that term is used in the ADA. "The term 'disability' means, with respect to an individual": (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) an individual regarded as having such an impairment".[3] *Kay v. Lester Coggins Trucking, Inc.*, 141 F. App'x 824, 826 (11th Cir. 2005) (citing the ADA, 42 U.S.C. § 12102(2)).

To prove that he/ she is disabled under the ADA or RA. a Claimant must demonstrate that their impairment limits a major life activity" and "must further show that the limitation on the major life activity is substantial."   *Toyota Motor Mfg., Kentucky, Inc. v. Williams,* 534 U.S. 184, 195 (2002) (citations and internal punctuation omitted); *see also Rossbach v. City of Miami,* 371 F.3d 1354, 1357 (11th Cir.2004) (outlining three-step process for establishing an ADA disability, consisting of proof of (i) an impairment, (ii) limitation of a "major life activity," and (iii) substantial limitation of that major life activity by the impairment).   "Major life activities under the ADA are basic activities that the average person can perform with little or no difficulty, including 'caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and

---

[3] Pursuant to 42 U.S.C. § 12102(3). the "being regarded as having such an impairment" category "shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less." 42 U.S.C. § 12102(3)(B).

working.'"   *Battle v. United Parcel Serv., Inc.,* 438 F.3d 856, 861 (8th Cir.2006) (quoting 29 C.F.R. § 1630.2(i)).   To be substantially limited in the major life activity of caring for himself, an individual must have an impairment that "'prevents or severely restricts' his ability to care for himself compared with how unimpaired individuals normally care for themselves in daily life." *Toyota Motor Mfg.,* 534 U.S. at 198.

Here, this Plaintiff cannot meet the rigorous *Toyota* standard.   Plaintiff states that he had a broken arm that was secured in a half cast and sling. There is no indication whatsoever that Plaintiff suffered from any limitation in major life activities.   *See Didier v. Schwan Food Co.,* 465 F.3d 838, 842 (8th Cir. 2006) (finding that plaintiff's "broken right arm certainly does not 'prevent' him from caring for himself, and … does not 'severely restrict' him from caring for himself compared with how unimpaired individuals normally care for themselves).   The law is clear that merely having an impairment does not make one disabled for purposes of the ADA. *See Kay* 141 F. App'x at 827 (finding that Plaintiff's inability to move her arm over her head and lift over thirty pounds was a temporary impairment which "was neither severe, permanent nor long-term for purposes of the ADA"); *Kruger v. Hamilton Manor Nursing Home*, 10 F. Supp. 3d 385, 389 (W.D.N.Y. 2014) (holding Plaintiff's broken arm was a temporary physical injury which is not considered a disability under the ADA).

Because Plaintiff has failed to meet the *prima facie* burden of establishing his broken arm qualifies as a disability for ADA purposes, Plaintiff's claim under the ADA for failure to accommodate a disability is subject to dismissal.

11

B.    Claims against Defendant Timothy Ward

Plaintiff asserts that "Defendant Timothy Ward allowed plaintiff to be housed in an unsafe prison and that he "was transferred with change of security after filing grievances and for previous civil action in retaliation".  ECF No. 5 at 7.  A prisoner "has no constitutionally protected liberty interest in being classified at a certain security level or housed in a certain prison." *Kramer v. Donald,* 286 F. App'x 674, 676 (11th Cir.2008) (per curiam) (citing *Moody v. Daggett,* 429 U.S. 78, 88 n. 9 (1976) (noting that Congress has given prison officials full discretion to control conditions of confinement, including prisoner classification)); *Cohen v. United States*, 151 F.3d 1338, 1344 (11th Cir. 1998) (finding that classification decisions about individual prisoners are generally left to prison officials' discretion).  Classification decisions are only unconstitutional if they are done for unconstitutional reasons.  *See Lucien v. DeTella*, 141 F.3d 773, 774 (7th Cir. 1998).

Here, it appears that Plaintiff is vaguely claiming that his transfer was solely based on such an unconstitutional reason - retaliation for exercise of First Amendment rights.[4] However, a prisoner must allege more than his personal belief that he is the victim of retaliation.  *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997).  To state a retaliation claim, an inmate generally needs to show that he engaged in protected conduct; that the prison official's retaliatory conduct adversely affected the protected conduct; and a causal connection between the protected conduct and the adverse action.  *See, e.g.,*

---

[4] This Court notices that Plaintiff ardently requested to be transferred out of Georgia State Prison just prior to his transfer into Macon State Prison.  *See* ECF No. 1-2 at 2 and ECF No. 2 in *Herbert v. Deal*, 6:19-cv-52-JRH-BWC (S. D. Ga. June 6, 2019).

*Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011).   However, a plaintiff is required to do more than make "general attacks" upon a defendant's motivations and must articulate "affirmative evidence" of retaliation to prove the requisite motive. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998) (citations omitted).   A prisoner's "unsupported conclusory assertion about a retaliatory motive is not enough to state a plausible claim for relief." *Leonard v. Monroe Cnty., Fla.*, 789 F. App'x 848, 850-51 (11th Cir. 2019) (per curiam). In other words, the prisoner must show that, as a subjective matter, a motivation for the defendant's adverse action was the prisoner's grievance or lawsuit. *Smith v. Mosley*, 532 F.3d 1270, 1278 (11th Cir. 2008)).

Plaintiff alleges that Defendant Ward "allowed" Plaintiff to be transferred to Macon State Prison.   ECF No. 5 at 7.   He concludes that this transfer and his "change of security … from medium to close" was done in retaliation to his filing a lawsuit and grievances. *Id*.   Notably, there are no allegations whatsoever that Defendant Ward had specific knowledge of Plaintiff's previous grievances and lawsuits, nor that Ward was directly involved in the decision to transfer Plaintiff out of Georgia State Prison and to Macon State Prison.   Plaintiff's assumption that Defendant Ward was involved in the decision to place him at Macon State Prison to curb his filing of complaints is pure speculation and not evidence of retaliation.   Because Plaintiff's allegations of retaliation by Defendant Ward are purely speculative and conclusory, they are subject to dismissal.   *See Gonzalez v. Archer*, 725 F. App'x 739, 742-43 (11th Cir. 2018) (per curiam) (affirming dismissal of retaliation claims as vague and conclusory where prisoner "did not present facts that

plausibly support[ed] a causal connection" between his grievances, the defendants, and the adverse actions taken); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (holding dismissal is appropriate where a plaintiff "produced nothing, beyond his own conclusory allegations, suggesting that" defendant's actions "were motivated by a retaliatory animus"); *Allen v. St. John*, 827 F. App'x 1002, 1007 (11th Cir. 2020) (per curiam) (holding that prisoner's "retaliation claim was properly dismissed for lack of supporting facts" where claim "contain[ed] only the conclusory assertion that [the prisoner] was retaliated against, and that is not enough to state a claim upon which relief may be granted").

If Plaintiff's theory of liability for his retaliation claim against Defendant Ward is based in Defendant's supervisory role as the Commissioner for Georgia Department of Corrections, then Plaintiff's claim still fails.   Supervisors within a prison are liable under § 1983 only if they personally participate in the constitutional violation, direct their subordinates to act unlawfully, or know their subordinates will act unlawfully but fail to stop them.   *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir.2010); s*ee also Asad v. Crosby*, 158 F. App'x 166, 170-72 (11th Cir. 2005).   Stated another way, a prisoner must allege facts showing either that a supervisor personally participated in the alleged constitutional violation or that there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation to state a claim against a prison official based solely on their supervisory position.   *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999); *Dalrymple v. Reno*, 334 F.3d 991, 995 (11th Cir. 2003). Here, Plaintiff gives no factual basis for his retaliation claim against Defendant Ward in

his supervisory role beyond conjecture.   Thus, any claim based upon Ward's supervisory position is subject to dismissal.

      C.    <u>Failure to protect claim against Defendants Ward, Sales, Smith, and Jefferies</u>

      Plaintiff's complaint can be further construed as raising a failure to protect claim. "[P]rison officials have a duty ... to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). "It is not, however, every injury suffered by one inmate at the hands of another that translates into a constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834.

      "A prison official violates the Eighth Amendment when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Carter v. Galloway,* 352 F.3d 1346, 1349 (11th Cir.2003) (internal quotation marks omitted).   To establish a § 1983 claim for deliberate indifference, a plaintiff must show "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019).

*Substantial risk of serious harm*

      In the jail setting, a risk of harm to some degree always exists by the nature of its being a jail.  *Purcell ex rel. Est. of Morgan v. Toombs Cnty., Ga,* 400 F.3d 1313, 1323 (11th Cir. 2005).   Successful failure to protect claims will generally require some further reason—beyond a plaintiff feeling threatened by his incarceration with other offenders convicted of violent and/or gang-related offenses—that a prison official could have

concluded that a particular threat evidenced a substantial threat, rather than the mere possibility of serious harm.  *See Marbury*, 936 F.3d at 1236; *see also Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir.1990) ("The known risk of injury must be a strong likelihood, rather than a mere possibility before a guard's failure to act can constitute deliberate indifference." (internal citations and quotations omitted)).  Moreover, the risk must be specific and imminent; "a generalized awareness of risk in these circumstances does not satisfy the subjective awareness requirement."  *Carter*, 352 F.3d at 1350.

An inmate can meet the burden of showing a substantial risk of serious harm by pleading facts showing "that he was in an environment so beset by violence that confinement, by its nature, threatened him with the substantial risk of serious harm" or by providing prison officials with details about a specific threat sufficient "to enable them to conclude that it presents a 'strong likelihood' of injury, not a 'mere possibility.'" *Marbury*, 936 F.3d at 1235-6 (quoting *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015)).

Here, Plaintiff states that upon his initial intake into Macon State Prison, "Defendant [Jefferies] was made aware of Plaintiff disabilitys (sic) along with other concerns on Nov. 9, 2021. 1) unsafe enviorment (sic) in D-1, 2) Plaintiff is medium security why he house wit close, 3) Property being taken by Sargent White, 4) Request to be placed at a prison with proper medical unit, 5) Plaintiff stress that he has never been a gang member".  ECF No. 5 at 9.  He further states that Defendant Sales and Smith "knew upon arrival with plaintiff left arm being in a sling and a half cast Defendants was more concern about watch

16

and shoes and not plaintiff disabilities Plaintiff complained several times during inspection and by family contacting the prison". *Id*. at 7.

Though Plaintiff notes his belief that the prison was understaffed and generally unsafe, he has failed to plead facts sufficient to show that "pervasive staffing and logistical issues" such as these "render[ed] prison officials unable to address near-constant violence, tensions between different subsets of a prison population, and unique risks posed by individual prisoners or groups of prisoners due to characteristics like mental illness." *Marbury*, 935 F.3d at 1235. Plaintiff has not alleged facts that he made any of the Defendants aware of a particular threat from a particular inmate or subset of inmates. Plaintiff has not alleged facts about any other inmate assaults at Macon State Prison.[5] Plaintiff has not alleged any specific facts to illustrate that Macon State Prison was so pervasively violent that simply being transferred and housed there posed a substantial risk of serious harm to him. Nor does he demonstrate that merely having an arm in a partial cast, in and of itself, placed him at a specific risk of serious assault from other inmates as opposed to the mere possibility of assault. *See e.g., Cassady v. Dozier*, No. 7:18-CV-158 (HL), 2022 WL 988315, at *12 (M.D. Ga. Mar. 31, 2022) (finding only risk of generalized harm instead of substantial risk of serious harm where prisoner plaintiff "expressed fear she would be sexually assaulted by unidentified 'gang members' because she was a transgender woman with full breasts and a feminine shape and that she was being sexually harassed daily and threatened by unidentified inmates into being their 'sex slave.' [and she]

---

[5] Other than his vague and conclusory assumption that Sargent Miller "places hits" on inmates which is addressed later in this Order.

requested to be moved to a 'PREA safe dorm'").   Indeed, a plaintiff must provide prison officials with "further information enabling them to conclude that the risk [of harm] was substantial and not merely possible." *Marbury*, 936 F.3d at 1236.   Though Plaintiff notes his belief that the prison was understaffed and generally unsafe, he has failed to plead facts sufficient to show that "pervasive staffing and logistical issues" such as these "render[ed] prison officials unable to address near-constant violence, tensions between different subsets of a prison population, and unique risks posed by individual prisoners or groups of prisoners due to characteristics like mental illness." *Marbury*, 935 F.3d at 1235.

Moreover, "[w]hether a substantial risk of serious harm exists so that the Eighth Amendment might be violated involves a legal rule that takes form through its application to facts." *Purcell*, 400 F.3d at 1320. The Eleventh Circuit courts have reviewed many other cases and found conditions worse than those alleged by this Plaintiff were not sufficiently serious enough to meet the objective component of an Eighth Amendment claim.   In *Harrison v. Culliver*, 746 F.3d 1288 (11th Cir. 2014), the plaintiff in a prison which housed between 830 and 990 inmates adduced evidence of thirty-three incidents of inmate-on-inmate violence involving weapons over the span of three-and-a-half years, four of which occurred in the same hallway where the plaintiff was assaulted. *Id.* at 1299-1300. The Court concluded that the evidence presented was "hardly sufficient to demonstrate that [the facility] was a prison 'where violence and terror reign.' " *Id.* at 1300 (citation omitted).   In *Marbury*, the plaintiff averred that he had personally witnessed fifteen other inmate stabbings prior to his own assault, had sent a written request to the

warden asking to be moved to another dorm (he described his dorm as an "over-rated gang affiliated block"), and had made several more in-person requests to be transferred.   936 F.3d at 1231. The Eleventh Circuit found Marbury's allegations insufficient to establish deliberate indifference based on a general risk of inmate-on-inmate violence.   *Id.* at 1235. The Court stated that although Marbury showed that inmates faced some risk of assaults by fellow prisoners, he had failed to identify "specific features of the prison that would make it particularly violent."   *Id.*

Indeed, this Plaintiff has presented far less factual allegations about his risk of harm than the evidence presented in both *Harrison* and *Marbury*.   This Plaintiff's allegations, at most, establish a mere possibility of injury, but they fail to carry his burden of establishing the strong likelihood of injury. Accordingly, Plaintiff's claim is subject to dismissal.   *See Brooks*, 800 F.3d at 1301 (discussing that a "mere possibility" of harm is not enough to state an Eighth Amendment claim and that "the plaintiff must plausibly allege a strong likelihood of serious harm").

*Deliberate indifference*

Even if Plaintiff met the objective component of his Eighth Amendment claim by establishing he was under a substantial risk of serious harm, he has failed to satisfy the subjective component by demonstrating that any of the Defendants were deliberately indifferent to his safety.   The subjective component of Plaintiff's Eighth Amendment claim generally "inquires whether the officials acted with a sufficiently culpable state of mind."   *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).   "[M]erely negligent failure to

19

protect an inmate from attack does not justify liability under section 1983." *Hughes*, 894 F.2d at 1537.   A Defendant must be found to have acted with deliberate indifference to an inmate's safety.   *Carter*, 352 F.3d at 1349.   In defining "deliberate indifference," the Supreme Court stated:

> With deliberate indifference lying somewhere between the poles of negligence at one end and purpose or knowledge at the other, the Courts of Appeals have routinely equated deliberate indifference with recklessness. *See e.g.*, *LaMarca v. Turner*, 995 F.2d 1526, 1535 (CA11 1993).... It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.

*Brennan*, 511 U.S. at 836.

Thus, the Court concluded that the "subjective recklessness" standard of criminal law is the test for "deliberate indifference" under the Eighth Amendment.   *Id.* at 839-40. Under this test, there is no liability for "an official's failure to alleviate a significant risk that he should have perceived but did not ...."   *Id.* at 838.   It is not enough that an inmate proves that the defendant should have known of the risk, but did not, as actual knowledge is the key.   *See Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996).

Stated another way, to be deliberately indifferent, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference.*"   *Brennan*, 511 U.S. at 837 (emphasis added).   Here, Plaintiff has presented no factual allegations showing that any of the Defendants possessed such a culpable state of mind. As to Defendant Ward, Plaintiff simply states that he "allowed plaintiff to be housed in an unsafe prison of Macon State

Prison. Due to unsafe conditions at Georgia State Prison and the under-staffing".  ECF No. 5 at 7.  As to Defendants Sales and Smith, Plaintiff alleges "Defendants allowed plaintiff life to be in danger while plaintiff was being assaulted to plaintiff layin (sic) in the dormitory day floor onconscious (sic) where there 'was not' any officer working the building or on the dormatory (sic) floor due to the shortage and under-staff of Georgia department of correction".  *Id* at 8.  He further writes that Sales and Smith "allowed inmates to possession of weapon, knifes, machetes, and other sorts of weaponry. Marsh, 268 F.3d at 1033, n.12 1034 Gates, 501 F.d at 1308 (injuries inflicted with weapons weighed in favor of finding Eighth Amendment violation".  *Id*.  Finally, as to Defendant Jefferies, Plaintiff states that "Defendant told Plaintiff that he would look into the concerns but fail to act and allow the plaintiff to be assaulted", "Defendant ignored plaintiff unsafe environment when if Defendant Jefferies would have acted or took action on Nov. 9, 2021 Plaintiff would have been free from assault", and that "Defendant delibertly (sic) did not have a care as his duty to be chief counselor in charge".  *Id*. at 9.

Although Plaintiff repeatedly uses the legal labels "deliberately" and "deliberate indifference to plaintiff serious safety concerns" when presenting his claims about these Defendants, Plaintiff's complaint is void of factual allegations to support these legal conclusions.  *See id*. at 6-9.  "[A] complaint must contain either direct or inferential allegations" from which the court can identify the "material elements necessary to sustain a recovery under some viable legal theory."  *Green v. Sec'y, Fla. Dep't of Corr*., 618 F. App'x 655, 656 (11th Cir. 2015) (quoting *Snow v. DirecTV, Inc*., 450 F.3d 1314, 1320 (11th

Cir. 2006); *see also Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1983) (citations omitted) (stating there must be "proof of an affirmative causal connection between the actions taken by a particular person 'under color of state law' and the constitutional deprivation").   A complaint's allegations must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 678; s*ee also Fullman v. Graddick*, 739 F.2d 553, 556–57 (11th Cir.1984) ("A complaint may justifiably be dismissed because of the conclusory, vague and general nature of the allegations…").   "Labels and conclusions" or "a formulaic recitation of the elements of a cause of action" that amount to "naked assertions" do not suffice."   *Iqbal*, 556 U.S. at 663.

Nowhere in his complaint does Plaintiff demonstrate any evidence to suggest that Defendants Ward, Sales, Smith, or Jefferies "had a subjective awareness of a substantial risk of serious physical threat to Plaintiff."   *Carter*, 352 F.3d at 1350.   More specifically, Plaintiff does not allege any facts that any of these Defendants subjectively knew of a substantial risk of serious harm to the Plaintiff and that they knowingly or recklessly disregarded that risk.   *See Goodman v. Kimbrough*, 718 F.3d 1325, 1332 (11th Cir. 2013). Plaintiff's vague allegations, at most, lean toward asserting negligence on the part of these prison officials.   However, negligent failure to protect an inmate from attack does not support a § 1983 claim.   *See id.* (noting that a prison official's failure to supervise the dorm where Plaintiff was housed was merely negligent and did not demonstrate that guards "*knew* of a substantial risk of serious harm" to plaintiff who was attacked by another inmate).   Thus, Plaintiff has failed to state a § 1983 claim upon which relief may be

granted and dismissal is warranted.

      D.    <u>Claims against Defendant White</u>

     Plaintiff states that Defendant White is liable for "failure to protect".   ECF No. 5 at

10.   More specifically, Plaintiff states "Defendant White the sargent of Macon State cert

team 'security'. Fail to protect and instead [he] places 'hits on inmates' paying other

inmates to hurt or assault others at Macon State Prison".   *Id*.   He further claims that

"Defendant White knew about the assault because defendant ordered the assault against

the plaintiff for the filing of a grievance about personal belongings".   *Id*.

     Plaintiff identifies no affirmative evidence that his assault at the hands of other

inmates was perpetuated at the behest of Defendant White.   Plaintiff only presents his

beliefs.   Mere conclusory allegations are not entitled to a presumption of truth. *See*

*Papasan v. Allain*, 478 U.S. 265, 286 (1986) (noting courts "are not bound to accept as true

a legal conclusion couched as a factual allegation"); *see also Cunningham v. School Board*

*of Lake County*, 2016 WL 1755612, at *6 (M.D. Fla. May 3, 2016) ("[w]hile this allegation

is a virtual parroting of the legal standard, it provides no factual basis from which the Court

can plausibly infer that the standard ... has been met"); *Leigh v. Warner Bros., Inc.*, 212

F.3d 1210, 1217 (11th Cir.2000) ("[t]his court has consistently held that conclusory

allegations without specific supporting facts have no probative value").   Without more

than Plaintiff's phantastic and unsubstantiated allegations of a conspiracy between

Defendant White and his attackers, Plaintiff cannot state a claim against the Defendant

based upon his assault by other inmates.   *See e.g., Baker v. Bobitt*, No. CV 620-066, 2020

WL 8572492, at *2 (S.D. Ga. Dec. 10, 2020), *report and recommendation adopted*, No. CV 620-066, 2021 WL 601875 (S.D. Ga. Feb. 16, 2021), *appeal dismissed*, No. 21-10674-A, 2021 WL 2226580 (11th Cir. Mar. 30, 2021) (dismissing claim as frivolous upon a finding that Plaintiff's allegations that the Defendant was "committing 'nutricide' in an attempt to harm the prison population and for the purpose of financial gain"); *Hickmon v. Johnson*, No. 3:08CV21RVEMT, 2008 WL 540937, at *2 (N.D. Fla. Feb. 25, 2008) (dismissing claim as frivolous upon a finding that Plaintiff's allegations did not appear to be credible or based in reality when Plaintiff alleged he was being poisoned and illegally drugged by prison officials in a conspiracy to murder him).   Besides dismissing Plaintiff's claims that Defendant White is some type of hitman as frivolous, this Court has reason to dismiss these allegations more specifically for failure to state a claim of conspiracy or a claim of retaliation.

### *Potential Conspiracy Claim*

"Allegations of conspiracy must be specific and based upon facts rather than conclusions." *Van Bethel v. Carter*, No. 5:12–cv–01153, 2012 WL 5932682 at *2, (N.D. Ala. Oct. 12, 2012).   "It is not enough to simply aver in the complaint that a conspiracy existed." *Fullman*, 739 F.2d at 557.   To state a conspiracy claim under § 1983, a plaintiff must (1) show that the defendants had a "meeting of the minds" or reached an understanding to violate his rights and (2) prove an actionable wrong to support the conspiracy.   *Bailey v. Bd. of Cnty. Comm'rs of Alachua County, Fla.*, 956 F.2d 1112, 1122 (11th Cir.1992).   Here, Plaintiff fails on both prongs.

Plaintiff's self-serving, bald assertion that Defendant White conspired with other inmates to have the Plaintiff assaulted is vague, conclusory, and is simply not enough to state a claim.   *See Iqbal*, 556 U.S. at 663 ("Threadbare recitals of the elements of cause of action, supported by mere conclusory statements do not suffice."); *Fullman*, 739 F.2d at 556–57 ("A complaint may justifiably be dismissed because of the conclusory, vague and general nature of the allegations of conspiracy."); *Grider v. Cook*, 590 F. App'x 876, 881 (11th Cir. 2014) (per curiam) (plaintiff failed to state a conspiracy claim where he made only "threadbare recitals of the agreement element of conspiracy" and failed to identify "even generally" any "date, time, or location" where the agreement occurred).   Plaintiff's allegations of a conspiracy instigated by Defendant White to have the Plaintiff assaulted by other inmates are prodigiously vague and conclusory and thus subject to dismissal.

*Potential Retaliation Claim*

As previously addressed in this Court's analysis of Plaintiff's claim of retaliation by Defendant Ward, an inmate must establish in a claim of retaliation that: "(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action [the disciplinary punishment] and the protected speech [the grievance]."   *O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011) (per curiam) (citation omitted), *cert. denied*, 133 S. Ct. 445 (2012) (quoting *Mosley*, 532 F.3d at 1276).   The "retaliatory action" or "disciplinary punishment" the Defendant is accused of committing here is "placing a hit"

on the Plaintiff causing him to be assaulted by other inmates. Due to the vague and conclusory nature of these allegations, Plaintiff has failed to affirmatively demonstrate any retaliatory action committed by Defendant White.   Accordingly, a retaliation claim against Defendant White based in the inmate-on-inmate assault on the Plaintiff is subject to dismissal.

Moreover, Plaintiff appears to lodge an additional retaliation claim against the Defendant based in events that happened five days after Plaintiff's assault.   More specifically, Plaintiff states that:

> On December 6, 2021 while Plaintiff was waiting to be seen in Macon State Medical Unit the Plaintiff was being harassed and threaten by Defendant White while it was jokes to the other cert team members … comments made to Plaintiff '(1) That was just the beganing I'm going to teach you about writing grievances' (2) 'wait until your sister call the prison again you better hope I don't get the call' Defendant went on and on taunting the plaintiff to provoke plaintiff.

ECF No. 5 at 10.

Verbal taunts alone, even when distressing, are not generally sufficient to state an actionable § 1983 claim.   *See, e.g., Edwards v. Gilbert*, 867 F.2d 1271, 1273 n.1 (11th Cir. 1989); *Swoboda v. Dubach*, 992 F.2d 286, 290 (10th Cir. 1993) (holding that prisoner's allegations that police officer threatened to kill prisoner "fail by themselves to state a constitutional claim cognizable under § 1983").   Plaintiff has not alleged facts showing that Defendant White actually carried out the threat against Plaintiff.   Indeed, Plaintiff pleads no facts suggesting that the incident in which he was injured was even related to Defendant White's post-assault taunts, much less that Defendant White conspired with

whoever injured Plaintiff to cause those injuries.  *Hernandez v. Fla. Dep't Corr.*, 281 F. App'x 862, 866 (11th Cir. 2008) (per curiam) (holding that prisoner's allegations of "verbal abuse and threats ... did not state a claim because the defendants never carried out these threats and verbal abuse alone is insufficient to state a constitutional claim").

      E.    <u>Failure to investigate and prosecute assault claim against Defendant Sales and Smith</u>

Plaintiff claims that Defendants Sales and Smith "fail[ed] to investigate or hold anyone accoutable (sic) for plaintiff assault" and argues that "prison administrators at Macon State Prison indifference to brutal behavior to plaintiff … is sufficient to state an Eighth Amendment claim".  ECF No. 5 at 8.  Plaintiff is incorrect.  These allegations do not give rise to a constitutional claim.  *See Oliver v. Collins*, 904 F.2d 278, 281 (5th Cir. 1990) (affirming dismissal claims against sheriff who failed to press criminal charges against plaintiff's assailant because "[e]ven if [the sheriff] were the person with authority to decide whether or not to pursue criminal charges . . . "[t]he decision to file or not file criminal charges falls within [the] category of acts that will not give rise to section 1983 liability").

Furthermore, for his requested relief, Plaintiff states that he wants "to have a full investigation done on Macon State Prison for assault and assaults for hire by officers" and he wants "to file charges on each individual that assaulted the plaintiff and any and all Macon State officials that were involved and inmates".  ECF No. 5 at 13.  Thus, it appears Plaintiff seeks an order directing state authorities to investigate or bring criminal charges.

However, the United States District Courts do not have jurisdiction to institute criminal proceedings or the authority to order state authorities or law enforcement agencies or prosecutors to initiate investigations or prosecutions. *Otero v. U.S. Attorney Gen.*, 832 F.2d 141, 141 (11th Cir. 1987). Plaintiff, a private citizen, likewise has no power to originate criminal pleadings on his own initiative because a private citizen has no judicially cognizable interest in the prosecution or non-prosecution of another. *Id.*

Accordingly, Plaintiff's claim regarding a failure to investigate or prosecute anyone for Plaintiff's assault is subject to dismissal for failure to state a claim for which relief may be granted.

F.   Grievance procedure claim against Defendant Miller

Plaintiff states that "Defendant Miller who is over grievance procedure to allow inmater (sic) to arrest the complaint at the insitutional (sic) level to proceed to the court level … violated plaintiff Eighth and fourteenth Amendment by failing to investigate the complaint and respond within the allowed SOP time frame in due process of law hindering plaintiff to move further with his action delibertly (sic)". ECF No. 5 at 9. The best the Court can possibly discern is that Plaintiff may be attempting a § 1983 action based on violations of some prison rule or policy. However, "[i]n a § 1983 action, a federal court considers whether a constitutional right has been infringed, not whether bureaucratic procedures have been violated." *Jones v. Schofield*, No. 1:08-CV-7 WLS, 2009 WL 902154, at 3 (M.D. Ga. Mar. 30, 2009) (*citing Rineholtz. v. Campbell* 64 F.Supp.2d 721, 731 (W.D.Tn.1999). "Prison regulations ... were never intended to confer rights on

inmates or serve as a basis for constitutional claims." *Id*. "Instead, [state prison] regulations, as well as the Unified Code [of Corrections], were designed to provide guidance to prison officials in the administration of prisons." *Id*. "Prison regulations and Standard Operating Procedures do not confer federal rights to prisoners that may be enforced or redressed in a § 1983 action." *Id*. Therefore, any constitutional claim raised by the Plaintiff regarding these Defendants violating a prison rule, regulation, or policy is subject to dismissal.

If Plaintiff's claim against Defendant Miller is that, as a "Grievance Investigator", he has violated Plaintiff's rights by not reviewing his complaints or grievances, then that claim also fails. A prisoner has no constitutional right to participate in grievance procedures. *See Wildberger v. Bracknell*, 869 F.2d 1467, 1467-68 (11th Cir. 1989); *Bingham v. Thomas*, 654 F.3d 1171 (11th Cir. 2011) (affirming district court's dismissal of Georgia state prisoner's § 1983 claim that prison's grievance procedures were inadequate) (citing *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994) ("the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state"); *Doe v. Moore*, 410 F.3d 1337, 1350 (11th Cir.2005) ("State-created procedural rights that do not guarantee a particular substantive outcome are not protected by the Fourteenth Amendment, even where such procedural rights are mandatory.")). A supervisor is not "personally involved" in a constitutional violation merely because he or she fails to respond to complaints from a prisoner. *Asad*, 158 F. App'x at 170-72 (affirming district court's dismissal of supervisory liability claims against

two defendants who failed, *inter alia*, "to afford [plaintiff] relief during the grievance process," because the record failed to show that they "personally participated in the alleged constitutional violations, or that there was a causal connection between the supervisory defendants' actions and an alleged constitutional violation"); *see also Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (refusing to impose liability under § 1983 on supervisory officials who denied administrative grievances and otherwise failed to act based on allegations contained in the grievances), *cert. denied*, 530 U.S. 1264 (2000).

For all the reasons stated above, Plaintiff has failed to state a claim under § 1983 against Defendant Miller.

G.   Deliberate indifference to a serious medical need claim against Defendant Dr. Colwin

Plaintiff raises a claim against Defendant Colwin that can be liberally construed as a claim of deliberate indifference to a serious medical need.   ECF No. 5 at 11-12.   "It is well settled that the 'deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment.'"   *McElligott v. Foley*, 182 F.3d 1248, 1254 (11th Cir. 1999) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).   "However, not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.'"   *Id*. (quoting *Estelle*, 429 U.S. at 105).   To state a claim under the Eighth Amendment, "a plaintiff 'must satisfy both an objective and a subjective inquiry.'"   *Valderrama v. Rousseau*, 780 F.3d 1108, 1116 (11th Cir. 2015) (quoting *Bozeman v. Orum*, 422 F.3d

30

1265, 1272 (11th Cir. 2005)).   The objective inquiry may be met by showing an "objectively serious medical need," and the subjective inquiry may be met by showing "that the prison official acted with an attitude of 'deliberate indifference' to that serious medical need." *Farrow v. West,* 320 F.3d 1235, 1243 (11th Cir. 2003) (citing *Farmer v. West*, 511 U.S. 825, 834 (1994) and *McElligott,* 182 F.3d at 1254 and *Campbell v. Sikes*, 169 F.3d 1353, 1363 (11th Cir. 2003)).

"[A] serious medical need is considered 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"   *Id.* at 1243 (quoting *Hill v. DeKalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994)).   "In either of these situations, the medical need must be 'one that, if left unattended, "pos[es] a substantial risk of serious harm."'"   *Id*. (alteration in original) (quoting *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000)).   To establish deliberate indifference, a plaintiff must show that "(1) the officer was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, (2) the officer actually drew that inference, (3) the officer disregarded the risk of serious harm, and (4) the officer's conduct amounted to more than gross negligence." *Valderrama*, 780 F.3d at 1116 (citing *Bozeman,* 422 F.3d at 1272).

Plaintiff states that he "was attacked by 5 inmates who entered his cell with weapons and stabbed the plaintiff and assaulted plaintiff until plaintiff was on conscious".   ECF No. 5 at 5.   Plaintiff further states that he "was struck several times by knives in multiple areas 'face', 'head', 'back', and leg".   *Id*. at 11.   Plaintiff states he was taken to the

Cordale ER where "once plaintiff was seen plaintiff was bandage and given prescription for pain and mild concussion from trauma (sic) to the head".   *Id*. at 5 and 11.   Plaintiff was immediately released from the hospital and back to the custody of Macon State Prison. *Id*. at 5 and 11. Plaintiff gives no details whatsoever about his actual injuries.   He never specifies whether they were only superficial injuries (as would be evidenced by treatment with only bandages and immediate discharge from the hospital) or if he suffered deep puncture wounds requiring stitches, surgery, or other more medically invasive and serious treatment.   He merely states that he "suffered serious amount a pain from the injurys". *Id*. at 6.   Thus, as to the objective inquiry, Plaintiff has wholly failed to give enough information regarding his injuries to determine whether his medical need from his injuries were such that if they were left unattended, they posed a substantial risk of serious harm. Accordingly, Plaintiff has failed to satisfy the objective prong of a deliberate indifference to a serious medical need claim.

However, due to the often-unintelligible writing style of the Plaintiff, and out of an abundance of caution, the Court will also move into the subjective inquiry.   An official acts with deliberate indifference when he or she "knows of and disregards an excessive risk to inmate health and safety." *Brennan*, 511 U.S. at 837.   Additionally, the disregard of risk must be "by conduct that is more than mere negligence." *Bingham*, 654 F.3d at 1176; *see also Miller v. King,* 384 F.3d 1248, 1251 (11th Cir.2004) ("even gross negligence" is insufficient to establish liability under § 1983).   "[I]t is obdurancy and wantonness, not inadvertence or error in good faith," that violates the Constitution in "'supplying medical

needs.'" *Adams v. Poag,* 61 F.3d at 1543 (quoting *Whitley v. Albers,* 475 U.S. 312, 319 (1986)).

To show deliberate indifference, it is not enough that prison medical personnel have been negligent in diagnosing or treating a prisoner's condition, since it is clear that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle,* 429 U.S. at 106; *Harris v. Thigpen,* 941 F.2d 1495, 1505 (11th Cir.1991). In fact, care provided to a prisoner need not be "perfect, the best obtainable, or even very good." *Harris,* 941 F.2d at 1510 (quoting *Brown v. Beck,* 481 F.Supp. 723, 726 (S.D.Ga.1980)).

Plaintiff describes only one encounter with Defendant Colwin of which he states that on the night of his assault, Dr. Colwin "ordered prison officials to take plaintiff to the hospital right away". ECF No. 5 at 11. Although Plaintiff repeatedly complains about the medication he did not receive at Macon State Prison and describes other subsequent interactions with other medical personnel and the submitting of "sick calls", Plaintiff never alleges that Defendant Colwin had any direct involvement in his medical care since the night of his assault. *See id.* To ascribe liability to Defendant Colwin, Plaintiff merely states that he is "the head doctor over Macon State Medical Unit" and he "knew plaintiff where abouts in the prison but fail to do a follow up for plaintiff being assaulted". *Id.* at 11-12. It appears that Plaintiff is once again attempting to establish a claim based on the supervisory position of a Defendant. Furthermore, nowhere within the complaint does Plaintiff establish that Dr. Cowen was purposely disregarding treatment of the plaintiff nor

acting wantonly reckless.   Thus, Plaintiff fails to satisfy the subjective prong of a deliberate indifference to a serious medical need claim.

For all the reasons set forth above, Plaintiff has failed to establish a claim of deliberate indifference to a serious medical need against Defendant Colwin and that claim is subject to dismissal.

IV.   <u>Conclusion</u>

Plaintiff's motions for leave to proceed *in forma pauperis* (ECF Nos. 2 and 6) are **GRANTED**.   For all the reasons set forth above, it is **RECOMMENDED** that Plaintiff's complaint be **DISMISSED without prejudice.**

OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the Honorable Marc T. Treadwell, United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation.   The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections.   Any objection should be no longer than **TWENTY (20) PAGES** in length.   *See* M.D. Ga. L.R. 7.4.   Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made.   *See* 11th Cir. R. 3-1.

**SO ORDERED AND RECOMMENDED**, this 26th day of July, 2022.

/s/ Stephen Hyles
UNITED STATES MAGISTRATE JUDGE